Porter, J.
John Trimble, one of the creditors of the insolvent, Clay, claims to be paid in preference to those who are merely personal, on the ground, that one M. Grew, of whom he is assignee, placed in the hands of the insolvent, in the year 1808, notes and bills of exchange, to the amount of $12,000, to be held as an indemnity, against any consequences that might ensue from bonds given by him, at the custom-house, on the clearing out of a vessel, in which M. Grew had an interest.
This contract is proved by a written receipt, signed by John Clay, which was first endorsed and transferred to one J. Dillon, and by him assigned to the present claimant, Trimble.
*520 East’n District.
April, 1821.
The syndics of Clay resist this application, on two grounds—1. That the matters and things involved in the demand, have been already finally adjudged, in a case wherein Dillon, under whom Trimble claims, is plaintiff; and—2. That the transaction gives no preference over the other creditors.
From the statement signed by counsel, it is admitted, that the suit in the district court of the united states, which was by bill in chancery, was for the use of the present plaintiff, and for the same cause of action, and formed on the same written document now filed. But the parties differ widely on the nature of the judgment rendered in that court. It is insisted, on one side, that the cause was merely dismissed without an examination of its merits; while on the other hand, it is strenuously contended, that all the matters and things arising out of the issue joined, were fully examined and finally decided on. On one point the parties agree, what, indeed, they could not differ about, that unless the merits were enquired into, the res judicata has not been formed by the decision.
The petition has been lost, but the answer is found, and makes part of the record. It *521 denies the facts on which recovery is sought; denies that the syndics are bound to pay the money claimed, and prays, that the premises may be enquired of by the country.
The judgment rendered, was in the following words, “the bill and answer in this cause, having been read, and the argument of counsel thereupon heard, it is ordered, adjudged and decreed, that the said bill be dismissed, and judgment be entered up in favour of the defendants, with costs of suit to be taxed.”
Pleas of this kind, which go to prevent our examining a cause on its merits, should be fully made out by him who claims the benefit of them ; they cannot be aided by inference, nor supported by deductions drawn from what is probable ; they should be fully proved.
This proof, I do not think is furnished in this case, for the following reasons—
The answer prays, that the facts should be enquired of by a jury. The constitution of the united states confined the parties to the same mode of trial. It does not appear, that a jury ever passed on the cause ; hence I conclude, that the facts were never tried.
It is not pretended, that the minutes of the *522 court have been lost, and had any such trial taken place, the record would have shewn it.
The language used by the court, in giving judgment, satisfies me, that the case was not decided on the merits. “The bill and answer being read, and the argument of counsel heard, it is ordered, adjudged and decreed, that the said bill be dismissed.” I do not presume, that any court in this state, if a cause was tried on its merits, would merely state, that the case was decided on the reading the petition and answer. At least, it cannot be presumed, that such inaccuracy would have been permitted by the enlightened individual who then presided in that court.
Nor, if the case had been considered as settled between the parties by the decision, would the court have used the expressions, “that the bill be dismissed.” That language is not used in giving final judgment.
Great stress is laid on the petition of appeal, stating, that a final decree had been rendered ; but I do not think, that any thing can be fairly drawn from this. Because, it was necessary to use that language; and because, it is every day’s practice, even when one of the parties have suffered a non-suit. There are *523 many cases which are final, so as to authorise an appeal, and not final on the facts in dispute and at issue.
The next question is, whether the contract proved here, gives any privilege over creditors merely personal.
This is not a deposit, but a pledge, which is defined by Pothier in his treatise, du Contrat de Nantissment ; a contract by which the debtor, or some one for him, gives to his creditor, a thing to be detained for the surety of his credit. Our Code has adopted this definition, 446, art. 1.
And it may exist, and be created for a debt to be contracted, or depending on a condition, as in this case before the court. Pothier, id. chap. 1, sec. 3, n. 10.
It is stated, by Febrero, and the author of the Curia Philipica, that in cases of insolvency, he who has delivered property to his debtor, by any contract which does not transfer the property in it, remains the master, and is paid in preference to the other creditors; and they both add, that the same privilege exists for the price, if the debtor should have alienated the object thus placed in his hands. Febrero, del Juicio de Concurso, *524 lib. 3, chap. 3 sec. 2, n. 185. Curia Philipica, lib. 2, Commercio Terrestre, chap. 12, Verb, Prelacion, 415, n. 5.
A pledge does not amount to alienation : pignus manente proprietate debitoris, solam possessionem transfert ad creditorem, Digest, liv. 13, tit. 7, Loi, 35. Our Code recognises the same doctrine, 446, 448, art. 1, 2, and prohibits the creditor to sell it in case of failure of payment; and declares, that the debtor remains the proprietor of the thing pledged, which is in the hands of his creditors, only as a deposit to secure his privilege on it. Art. 15, id.
A difficulty suggested itself to me, in the course of this enquiry, from what is stated by Pothier, in his treatise already referred to, chap. 1, art. 1. sec. 1, n. 6.
He observes, that in respect to incorporeal things, such as debts active, they are not susceptible of the contract of pledge ; because, they are not susceptible of a real delivery, which, according to him, is of the very essence of the contract ; and he cites, in support of the opinion, a passage from the Digest, liv. 41, Loi, 43, sec. 1. It appears, however, from a note on the text, that according to the practice in France, it had been held, *525 they might form the object of this contract, if the act transferring them was passed before a notary. What weight the authority of this eminent writer would have had on deciding this question, it is unnecessary to say, as by a law of the Partidas, 1, tit, 12, ley. 2, it is expressly declared, that debts, and all other kinds of rights, may be pledged.
These authorities are, in my opinion, decisive on the question. They establish the principle, that when the debtor receives property by a contract, which in its nature, does not transfer the dominion or right in it ; that the owner retains the privilege of being paid in preference to other creditors ; that the pledge is a contract of that description, and that, if the thing be alienated, there is the same privilege on the price. I am therefore of opinion, that the judgment of the district court be annulled, avoided and reversed, and that the appellant be placed on the tableau of distribution of the estate of J. Clay, as a privileged creditor, to be paid in preference to those merely personal.