[No. 6,500.—In Bank.]

## DOWNING *v.* GRAVES.

FINDINGS.—For a finding to be sufficient, either the ultimate fact must be found, or facts from which the ultimate fact is necessarily deducible.

CONTRACT—SUB-CONTRACTOR — ACTION—NOVATION — ASSIGNMENT.— One who contracts with another for the building of a house, does not thereby incur any liability to the sub-contractors of the original contractors, except such as may be fastened upon him by proceedings under the Mechanics' Lien law; and therefore, where there has been no assignment, or novation of the contract, an action cannot be maintained, (otherwise than under the Mechanics' Lien law) by a sub-contractor against the owner, for work and labor done and materials furnished in the construction of a building.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Twelfth District Court, City and County of San Francisco. DAINGERFIELD, J.

*Bishop & Fifield*, for Appellant.

The findings do not support the judgment. A man cannot recover of A. for work done under contract with B. (*Brown* v. *Aubrey*, 22 Cal. 566; *Walker* v. *Brown*, 28 Ill. 378; *Vanderwerker* v. *Vt. C. R. R. Co.* 1 Wms. (Vt.) 125; *Cleaves* v. *Stockwell*, 33 Me. 341; *The Indianapolis* v. *O'Reily*, 38 Ind. 140; *Marks* v. *Indianapolis R. Co.* 38 id. 440; *Perry* v. *Bailey*, 12 Kan. 539; *Parker* v. *Emery*, 28 Me. 492; *Benedict* v. *Danbury, etc. R. Co.* 24 Conn. 320.)

The findings do not cover the issues. There is no unequivocal finding that the work was by plaintiff done at defendant's "special instance and request." (*Lassing* v. *Paige*, 51 Cal. 575; *Zottman* v. *S. F.* 20 Cal. 96.)

*Robinson, Olney & Byrne*, and *W. W. Cope*, for Respondent.

The painting of the entire interior of the building was done by the plaintiff under the direction of the defendant, and during the progress of the work, O'Mahoney & Brother notified the defendant that the changes were so great that they would not be responsible for them. After the work had been done, the defendant notified the plaintiff to present his bill, which the plaintiff did. The only dispute was as to the value of the work; and, upon an attempt to arbitrate the matter, the defendant called in

as arbitrator, Mahoney, the original contractor. It is incredible that all the parties should act as they did, unless they supposed the old contract was done away with.

SHARPSTEIN, J. :

The plaintiff alleges in his complaint that between the 14th day of September, 1875, and the 12th day of August, 1876, he, at the special instance and request of the defendant, performed work and labor for and furnished materials to him, which were reasonably worth $7,539, no part of which has been paid except the sum of $2,900.

This allegation is denied by the defendant in his answer. Upon that issue the parties went to trial before the Court without a jury. The Court filed its findings of fact and conclusion of law, and thereupon ordered judgment to be entered in favor of the plaintiff for the sum of $5,117.05. . Judgment was entered, and the defendant moved for a new trial upon a statement. The motion was denied, and from the order denying a new trial, and the judgment, this appeal is taken.

The first question to be considered is, whether the Court below found in favor of the plaintiff upon the main issue in the case, *i. e.*, that the plaintiff performed work and labor, and furnished materials for the defendant, at his special instance and request, reasonably worth the sum for which the Court ordered judgment to be entered. We think that it must be conceded that the Court did not directly so find. And if it did not, our next inquiry must be whether the Court has found facts from which the ultimate fact upon which the plaintiff could only recover is necessarily deducible. The Court, in effect, found that the defendant entered into a contract in writing with J. O'Mahoney & Brother to build him a house according to certain written specifications, which provided for the painting, and the manner in which it was to be done. .

J. O'Mahoney & Brother entered into a verbal contract with the plaintiff, by which he agreed to do the painting described in said specifications for the sum of $2,900. The defendant directed the painting to be done in a much more elaborate and expensive style " than the specifications called for, and in such

a manner that the specifications cannot be used in estimating the value of the work actually done. Said changes in the kind and character of the work were done under the directions of the defendant, and frequent changes were made after the work had been nearly completed in accordance with the specifications or previous directions, making it necessary to repaint the work already done," and "that during the progress of the work J. O'Mahoney & Brother notified the defendant that the changes were so great that they would not be responsible for them, and that thereupon the sub-contractors, including Downing, were notified to present their bills to the defendant direct when the work should be done." The Court also found that the plaintiff did certain other painting for the defendant outside of the house to which the contract between J. O'Mahoney & Brother and defendant related. That the value of the labor and materials used in painting the house, for which no provision was made in said contract, was $274.10, and for whitening a cellar, $60. What the painting of the stable and fences was reasonably worth the Court omits to find.

Of the right of the plaintiff to recover the value of the labor and materials employed and used in the prosecution of other work for the defendant than that provided for by the contract between the defendant and J. O'Mahoney & Brother, we have no doubt; nor do we understand it to be a subject of controversy in this action. But we are unable to ascertain from the findings the value of the labor and materials so employed except as above stated. The Court further found: "That the sum of $2,900 would be a fair price for the work described in said specifications, and would fully pay for the labor and materials required to be performed and used therein, at the rates hereinafter fixed for the whole work." The Court then proceeds to find as follows:

"That all the work done by the plaintiff for the defendant was done in the best manner and of the best materials, and to the satisfaction of the defendant, and with the exception of the painting of the house, for which $274 is allowed plaintiff, all the said work was prosecuted at the same time, but interwoven with each other by reason of the workmen and materials being changed from one work to the other, whenever during the prog-

ress of the whole job more men could work to advantage on one part and less on another, or the reverse.

"That the reasonable and market value of the materials used and labor employed in performing the work in the complaint and hereinbefore set out, is the sum of $7,317.60.

"Of said sum the plaintiff has been paid by J. O'Mahoney & Brother the sum of $2,900, gold coin.

"That after all the said work had been completed, the defendant notified the plaintiff to present his bill, which the plaintiff did in the month of August, 1876.

"That the only dispute which arose between them was as to the value of the work, and the matter was not left to arbitration, because the parties could not agree upon the arbitrators; but nothing was ever at any time said about the provision of the specifications above set out in full, until the filing of the answer herein, by either plaintiff or defendant."

And as a conclusion of law from the foregoing facts, the Court found.

"1. That, on account of the manner in which the work hereinbefore described was carried on, and its character, the best method of arriving at its value is to take the reasonable and market value of the materials used, and the labor employed in its construction.

"2. That if the above specification, specifically set out, was ever a part of the plaintiff's contract, its observance was waived by the defendant.

"3. That the defendant is justly indebted to the plaintiff in the sum of $4,417.60, gold coin, for work and labor done and materials furnished, with interest thereon from October 15th, 1876, amounting to the further sum of $699.45.

"Let judgment be entered for the sum of $5,117.05, gold coin, and costs of the suit in favor of plaintiff."

Must we necessarily infer from these findings the ultimate fact, that the plaintiff, at the special instance and request of the defendant, painted the house which he contracted with J. O'Mahoney & Brother to build for him? If not, the findings will not support the judgment.

It is sufficiently clear that the Court below regarded the interference of the defendant in directing the work to be done in

a manner very different from what the specifications called for, and the notification of defendant by J. O'Mahoney & Brother, that they would not be responsible for the changes, and their notification of plaintiff that he must present his bill to the defendant direct when the work should be done, as constituting a cancellation of the contracts between defendant and the O'Mahoneys and the latter and the plaintiff, and the substitution of a contract between the plaintiff and defendant in relation to the same work. And such we understand to be the contention of the plaintiff's counsel in this Court. Before proceeding to express our views upon this point, we quote from the findings an extract from the specifications which form a part of the contract between the O'Mahoneys and the defendant. It is as follows:

" In case any additions, omissions, or alterations of the plans may be required by the owner during the progress of the work, they shall be acceded to by the contractor or contractors, and be carried into effect without in any way violating or vitiating any contract that may have been made for work or materials connected therewith ; but the amount of such alterations, after it shall have been agreed on by the contractor or contractors and the architects, or in case of failure to agree, by an umpire chosen by them, shall be added to or deducted from the contract price, as the case may be, by an indorsement on the contract, or no allowance will be made for the same by either party."

Now it will probably be conceded, that if the original contractors had done this painting without the intervention of a sub-contractor, the defendant, by virtue of this stipulation, might have insisted upon all the departures which the Court finds that he did insist upon, from the specifications, without violating the contract between him and them. But it is urged on behalf of the plaintiff that he knew nothing of this stipulation. As the contract in which it was inserted was one to which he was not a party, it is quite immaterial whether he did or not. His ignorance could not absolve the O'Mahoneys from their obligation to observe it. The plaintiff's contract was with them. If they omitted to bind him to carry out their contract with defendant, that was a matter wholly between plaintiff and them, and one with which the defendant had no concern. He had a

right to insist that the original contractors, or whoever under-
took to represent them in doing the work, should do it accord-
ing to his contract with them. And that is all he is found to
have done. The notices which the O'Mahoneys gave to the
plaintiff can in no way affect the defendant; and the finding,
that the defendant, after the work was done, notified the plaint-
iff to present his bill, has no bearing upon the main issue in
the case. If the Court had not found that the plaintiff under-
took to do the work under a contract between him and the
O'Mahoneys, and there had been some controversy as to wheth-
er the defendant did not employ the plaintiff to do it, this fact
might have a tendency to prove that the plaintiff did do the
work at the special instance and request of the defendant. But
the Court has directly found that he did not, and whatever may
have transpired after the work was completed is wholly imma-
terial in this action. No defect in the findings can be cured by
the evidence. We cannot find from the evidence an essential
fact omitted by the Court below. We are satisfied, however,
that the findings are quite as favorable to the plaintiff as the
evidence will warrant. All that was said and done by the con-
tractors, the plaintiff, defendant, and architect, in regard to the
payment of the plaintiff's bill, satisfies us that the contract be-
tween the defendant and the contractors was recognized as sub-
sisting and being in full force after the completion of the entire
work. The plaintiff's counsel in his brief says:

"O'Mahoney & Brother, so far as appears, had nothing to
do with the *extra work*, or the payment therefor, but were sim-
ply paid the original contract price for which they agreed to
build the house.

"After Downing completed the painting, let us see if this
new arrangement as to him was carried out, so far as anything
at all was done.

"At folio 720, *et seq.*, it will be seen that Raun asked Down-
ing to present his bill. At folio 721, Raun says: 'I asked him
for the bill of *extra work*, and the other bills for the old house
that he had painted for Mr. Graves. I said: Get your bills to-
gether, and come along and have it settled up.'

"'Q.—And if you had been satisfied with the bill, you would
have certified to it and paid it? A.—I would have certified to

it at once. I got instructions from Mr. Graves in the *beginning to settle up* and be liberal, and not stand on a little money.'"

It will be observed that the counsel, as well as the witness whom he quotes, speaks of the unsettled claim of his client as one for *extra work.* Now he could have no claim for extra work unless it was done under the contract of the defendant with the O'Mahoneys. And it was clearly by virtue of that contract that he presented that claim. That contract required an architect's certificate, and if that could not be obtained for an amount satisfactory to the plaintiff, then there was a provision for arbitration. It is obvious the parties had these provisions of the contract in view during all their negotiations for a settlement. If that contract had been abandoned or cancelled, and the plaintiff had then thought that he was entitled to the reasonable value of his labor and materials, upon an implied contract of the defendant to pay what they were reasonably worth, there would be no allusion to an architect's certificate, much less to " extra work."

Judgment and order denying the defendant's motion for a new trial reversed.

Ross, J., McKee, J., McKinstry, J., and Thornton, J., concurred.